Appeal by the plaintiff from an order of the Supreme Court, Nassau County (Sharon M. J. Gianelli, J.), dated July 25, 20.16. The order denied the plaintiff’s motion pursuant to CPLR 5240 to modify and limit an income execution directed by an order of that court dated June 26, 2013, by limiting it to no more than 10% of his income.
 

 Ordered that the order dated July 25, 2016, is reversed, on the law, without costs or disbursements, the plaintiff’s motion pursuant to CPLR 5240 is granted to the extent of limiting the income execution directed by the order dated June 26, 2013, to 40% of the plaintiff’s disposable earnings (see CPLR 5231 [g]; 5241), and the plaintiff’s motion is otherwise denied.
 

 The parties were married in April 1985, and there are two children of the marriage. After entering into a separation agreement (hereinafter the agreement), the parties were divorced by a judgment entered August 3, 1999. The agreement was incorporated but not merged with the judgment of divorce. Article IX of the agreement provided that the plaintiff would pay a fixed amount of combined spousal and child support, starting at $2,500 per month as of the date of the agreement, and subject to specified increases over time. As additional child and spousal support, the plaintiff also agreed to pay 25% of any income in excess of his regular earnings, including bonuses (see Fishler v Fishler, 2 AD3d 487, 488-489 [2003]).
 

 Although there is no indication in the record that the plaintiff failed to pay the fixed amount in combined spousal and child support every month, he failed to satisfy his obligations with respect to the additional support obligations in the agreement, and fell into arrears with respect to the additional support payments (see id. at 488). In 2013, the parties litigated the amount of the plaintiff’s arrears for additional support from 2004 through 2012, and whether he should be held in contempt. The Supreme Court held a hearing on those issues. In an order dated June 26, 2013 (hereinafter the 2013 order), the court found that, from 2004 through 2010, the plaintiff had paid additional spousal and child support based on an income of $85,000 per year. However, the court found that the plaintiff’s “whole income” for those years had been substantially greater than $85,000 per year. The court noted that, based on those findings, the parties had stipulated that the plaintiff owed support arrears of approximately $1.6 million, and had stipulated to the entry of judgments against the plaintiff totaling that amount. The court found that the plaintiff had been “out of work for some time,” but that he had obtained employment in or around May 2012, earning at least $145,000 a year.
 

 In the 2013 order, the Supreme Court declined to hold the plaintiff in contempt, but found that “it should issue an order that will compel [him] to start reducing his sizable debt to [the defendant] in a serious and expeditious manner under the circumstances currently existing.” To that end, the court directed that, until all the judgments were satisfied in full, the plaintiff’s earnings, including bonuses and commissions, would be subject to a 65% income execution in favor of the defendant. The plaintiff did not appeal from the 2013 order.
 

 Approximately 2V2 years later, in February 2016, the plaintiff moved pursuant to CPLR 5240 to modify and limit the income execution by limiting it to no more than 10% of his income. In an order dated July 25, 2016, the Supreme Court denied the motion in its entirety. The plaintiff appeals. We reverse, grant the plaintiff’s motion to the extent of limiting the income execution to 40% of his disposable earnings (see CPLR 5231 [g]; 5241), and otherwise deny his motion.
 

 On appeal, the plaintiff does not dispute the amount of his outstanding support arrears. He contends only that the Supreme Court improvidently exercised its discretion in declining to reduce the 65% income execution on the ground that it was excessive and severely prejudiced his ability to pay his own expenses.
 

 CPLR 5241, which governs income execution for support enforcement, “inaugurated a broad expansion of the benefits available to a creditor” (Matter of Kennedy v Kennedy, 195 AD2d 229, 231 [1994]; see Granat v Granat, 152 AD3d 572, 573 [2017]). While an ordinary income execution is limited to a maximum of 10% of income (see CPLR 5231 [b]), the maximum percentage available for garnishment pursuant to CPLR 5241 is between 50% and 65%, depending upon the debtor’s other support obligations and the extent and duration of the support arrears (see CPLR 5241 [g]; Matter of Kennedy v Kennedy, 195 AD2d at 231). Here, the maximum percentage available for garnishment is 65% of the plaintiff’s disposable earnings (see CPLR 5241 [g] [ii]). CPLR 5231 defines “disposable earnings” as “that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld,” such as taxes and social security.
 

 Pursuant to CPLR 5240, a court “may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.” CPLR 5240 grants courts broad discretionary power to issue protective orders to “control and regulate the enforcement of a money judgment under CPLR article 52 to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the court” (Country Bank v Broderick, 120 AD3d 463, 464 [2014] [internal quotation marks omitted]; see Castle Restoration & Constr., Inc. v Castle Restoration, LLC, 149 AD3d 692, 696 [2017]; Paz v Long Is. R.R., 241 AD2d 486, 487 [1997]).
 

 Here, the Supreme Court determined that the 65% income execution was appropriate in light of the plaintiffs “history of substantial arrears.” However, notwithstanding his history of arrears, the plaintiff demonstrated that, at the time of his motion, a 65% income execution was unduly prejudicial. Since the 2013 order, the defendant has received the sum of at least $511,000 toward the arrears, both of the parties’ children have become adults and attended college, and only one of the adult children lives in the defendant’s home. The plaintiff demonstrated that the 65% income execution provided the defendant with a monthly payment of approximately $7,500, that the plaintiff received only about $3,000 per month after garnishment and other deductions, and that his monthly expenses were approximately $5,000. Significantly, the plaintiff’s expenses included the sum of $575 per month for student loan payments on behalf of one of the parties’ adult children. Additionally, the defendant has not disputed the plaintiff’s assertion that she has other sources of income apart from the monies that she receives from the income execution.
 

 Under all the circumstances present here, it cannot be said that, at the time of the instant motion, the 65% income execution struck “a fair balance between the needs of a creditor holding a valid money judgment and the needs of a debtor managing competing financial obligations” (Midlantic Natl. Bank/North v Reif, 732 F Supp 354, 357 [ED NY 1990]). To the contrary, the record reflects that the 65% income execution created a tremendous disparity between the plaintiff’s expenses and his actual income after garnishment and deductions, and that the defendant did not have any particular need for the maximum garnishment percentage.
 

 The defendant’s remaining contentions are without merit.
 

 Accordingly, the Supreme Court should have exercised its broad discretion to modify and limit the income execution to prevent unreasonable disadvantage and undue prejudice to the plaintiff (see CPLR 5240, 5241; cf. Keegan v Keegan, 204 AD2d 606, 607 [1994]). In light of his substantial arrears, we find that the plaintiff is not entitled to have the income execution limited to only 10% of his disposable earnings. However, on this record, the plaintiff demonstrated that limiting the income execution to 40% of his disposable earnings is warranted.
 

 Rivera, J.R, Roman, Maltese and LaSalle, JJ., concur.